

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-05-477-CR

THE STATE OF TEXAS                                                    STATE

V.

ROBERT LEAHY POWELL                                               APPELLEE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## OPINION

------------

The State appeals from the trial court's grant of Appellee Robert Leahy Powell's motion to suppress. In four points, the State argues that the trial court erred by granting the motion because (1) the detective's affidavit set forth sufficient circumstances from which the magistrate could find probable cause to issue the search warrant; (2) the trial court failed to give great deference to the magistrate's determination of probable cause; (3) the police officers did not exceed the scope of the search warrant; and (4) the police officers were not

required to obtain an additional search warrant before opening the two safes that they seized from the premises to be searched, took with them to the police station, and opened the following day. Because the trial court did not err by granting Powell's motion to suppress, we affirm the trial court's suppression order.

## BACKGROUND FACTS

On January 27, 2004, someone from Hurst TV & Appliance (Hurst TV) reported that a customer had purchased a big-screen television with a forged check. Someone was supposed to pick up the television before the end of that day. Hurst Police Officers James Hobbs and Terry Tabor went to the store to wait for the person to pick it up. Although a woman called about it, no one came for the television.

The next day, North Richland Hills (NRH) Police Detective Billy Daniels called Hobbs to say that the NRH police had arrested a woman named Lisa Lowery who had a receipt from Hurst TV for a big-screen television. Hobbs went to the NRH jail and met with Daniels, and the two officers interviewed Lowery in connection with the forged check she passed at Hurst TV. In all, Hobbs interviewed her once at the NRH jail and twice at the Hurst jail and secured three separate statements from her.

2

Lowery denied that she had stolen or made the checks she had passed and claimed that she had bought the checks and identification from different locations. One of the addresses that she gave Hobbs was 6919 Hardisty Street in Richland Hills (the Premises). Hobbs used the information provided by Lowery to prepare an affidavit to support the arrest and search warrant signed by Judge Ken Whiteley, municipal judge for the City of Hurst.

According to Hobbs's affidavit in support of the warrant at issue, Lowery had told him that she had received the check she passed at Hurst TV from Leia McGee and Powell. Lowery told Hobbs that Powell had called and asked her to buy the television for "them"; in exchange, Powell and McGee would pay her $200.00. Lowery told Hobbs that she had gone to the Premises on January 27, 2004 and that McGee had handed her the check and a Texas identification card, both in the name of Augustine Terrell. Hobbs swore that Lowery had told him that McGee and Powell had stolen the checks from the counter next to a cash register at Cingular Wireless and that they were making forged checks on a computer in the back room of the Premises near the garage. Lowery also told Hobbs that she saw some counterfeit twenty-dollar bills there on January 26, 2004.

Lowery additionally told Hobbs that she had bought a big-screen television from Sam's Furniture in Haltom City for Powell and McGee with

3

another forged check in the name of Augustine Terrell on January 22, 2004. According to Hobbs, Lowery said that the television she had bought from Sam's Furniture was located at the Premises, which she claimed was the residence of Powell, McGee, and McGee's grandmother, who was not involved in the criminal activity. According to Hobbs, Lowery also told him that she had used another forged check to buy a safe from Home Depot for Powell and McGee and that the safe was at the Premises. Lowery also told Hobbs that on January 27, 2004, she had seen at the Premises approximately fifty checks in the name of Stanley E. Rush and that there were guns and drugs at the Premises.

Hobbs ran a computer check on Powell and learned that he was in jail, not at the Premises. Hobbs also "was able to identify Leia McGee's grandmother as Roberta Halie McGee, a white female with a date of birth of August 20, 1920." He also confirmed that a white female had passed a forged check in the name of Augustine Terrell to purchase a Lexmark printer, mouse, and repair work on a laptop from Express Computer Repair. Hobbs additionally confirmed through the Texas and National Crime Information centers (TCIC and NCIC) that Leia Michelle McGee, a white female with a date of birth of October 2, 1967, had been arrested for theft and DWI.

On January 29, 2004, Hobbs submitted the affidavit described above to the municipal judge to obtain an arrest warrant for McGee and a search warrant

4

for the Premises. The affidavit accused McGee of stealing checks and possessing stolen property purchased with forged checks and listed the following property as "concealed and kept in violation of the laws of Texas" at the Premises:

- "Numerous customers' checks stolen from Cingular Wireless."

- "Checks and materials to make forged checks."

- "Computers, printers and scanners for forging checks."

- a big-screen television purchased with a counterfeit check.

- and a printer purchased with a counterfeit check.

The affidavit listed neither drugs nor safes as property to be seized, despite Lowery's statements that she had bought a safe with a forged check, that the safe she had bought was at the Premises, and that she had seen drugs at the Premises.

That same day, the magistrate issued the warrant to arrest McGee and to seize the specifically designated property, and Hobbs and other police officers executed the warrant.

Hobbs was the sole witness testifying at the hearing on Powell's motion to suppress. He testified that when the officers executed the warrant, they took two safes back to the police station. The next day, the police called a locksmith, who drilled into the safes at their request. Hobbs testified that

5

officers found methamphetamine in one of the safes.  The officers did not obtain a second search warrant before seizing or opening the safes.

Based on the methamphetamine found in the safe, a grand jury indicted Powell on two counts—possession with intent to deliver methamphetamine of 4 grams or more but less than 200 grams, including any adulterants or dilutants, and possession of methamphetamine of 4 grams or more but less than 200 grams, including any adulterants or dilutants.  Powell filed a motion to suppress the methamphetamine, alleging that (1) there was not probable cause on the face of the affidavit to support issuance of the search warrant, and (2) the police exceeded the scope of the search warrant by seizing the two safes, taking them to the police station, keeping them overnight, and then having them drilled open the next day.

After a hearing, the trial court granted Powell's motion to suppress in its entirety after "having considered the evidence and the credibility of the witnesses."  The State then timely filed a notice of appeal.

### STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[1]  In reviewing the trial court's decision, we do

---

[1] *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

not engage in our own factual review.[2] The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.[3] Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.[4]

When the trial court grants a motion to suppress without filing findings of fact or any other explanation, and the only evidence presented in the suppression hearing is the search warrant and testimony of the arresting officer—which, if believed, clearly constitutes probable cause—there is not a "concrete" set of facts that can be implied from such a ruling.[5] In those cases, there is a mixed question of law and fact that turns on an evaluation of the credibility and demeanor of the sole witness whom the trial court obviously

---

[2] *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).

[3] *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

[4] *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *State v. Ballman*, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref'd).

[5] *Ross*, 32 S.W.3d at 856.

chose not to believe.[6]  In such cases, we view the evidence in the light most favorable to the trial court's ruling, giving it almost total deference.[7]

The party bringing the motion to suppress bears the burden of establishing all of the elements of his Fourth Amendment claim, including establishing his privacy interest in the premises searched.[8]  Once a defendant has established the basis for a Fourth Amendment claim, however, the burden shifts to the prosecution to establish the validity of the search under the applicable theory of law.[9]  In this case, the State therefore bears the burden of proving the trial court erred by granting the motion to suppress.[10]

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the

---

[6] *Id.* at 856–58; *Guzman*, 955 S.W.2d at 89.

[7] *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Guzman*, 955 S.W.2d at 89; *see also Ross*, 32 S.W.3d at 856.

[8] *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998).

[9] *See id.*

[10] *See id.* at 77.

light most favorable to the trial court's ruling, supports those findings.[11]  We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling.[12]  We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.[13]

In the case now before this court, the trial court entered no findings of fact, but the record is not silent on the reasons for the trial court's ruling.  The trial court stated that his ruling was based on the evidence he heard and his determination of "the credibility of the witnesses."  We are not in a position to secondguess the trial judge's determination of the credibility of the witnesses but must view the evidence deferentially in support of the trial court's ruling.[14]

---

[11] *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006).

[12] *Id*. at 819.

[13] *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004); *Ross*, 32 S.W.3d at 855–56; *Romero*, 800 S.W.2d at 543.

[14] *See Estrada*, 154 S.W.3d at 607; *Guzman*, 955 S.W.2d at 89; *see also Ross*, 32 S.W.3d at 856.

In its third point, the State contends that the trial court erred by granting the motion to suppress because the seizure and opening of the two safes did not exceed the scope of the warrant. The warrant incorporated the affidavit that "particularly described" the property to be seized as:

> 2. THERE IS AT SAID SUSPECTED PLACE AND PREMISES PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF TEXAS AND DESCRIBED AS FOLLOWS:
>
> Numerous customers' checks stolen from Cingular Wireless.
>
> Checks and materials to make forged checks.
>
> Computers, printers and scanners for forging checks.
>
> Big Screen JVC 32 inch flat screen Television Serial Number 16837227 JVC TV Stand model #RKC32DF4AS purchased with a counterfeit check Dated 01-22-04 for $974.15 [f]rom Sam's Furniture.
>
> Lexmark Print Trio color jet printer purchased on January 24, 2004 for $99.99 with counterfeit check #4957 from Express Computer Repair.

A safe is mentioned in the affidavit, not as property to be seized, but as part of Hobbs's basis for probable cause: "Lisa Lowery also told me that Robert Powell and Leia McGee gave her another check #4961 in the name of Augustine Terrell for $199.14 to go to Home Depot to purchase a safe for them. Lisa Lowery advised that the safe is at [the Premises]."

Powell points out that there is a recognized distinction between search and seizure, citing *Horton v. California*:[15] "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property."[16]

The warrant did not specifically permit search or seizure of any safe, nor did the underlying affidavit list any safe as "property concealed and kept in violation of the laws of Texas." The supporting affidavit referred to a single safe, but it did not indicate what the safe would be used for, its size, its color, its brand, or anything else that would distinguish the safe from all other safes.

One of the most basic and fundamental requirements for a warrant is that it must "particularly describ[e] the place to be searched, and the persons or things to be seized."[17] "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another."[18] "As to what is to be taken, nothing is left to the discretion of the officer

---

[15] 496 U.S. 128, 110 S. Ct. 2301 (1990).

[16] *Id.* at 133, 110 S. Ct. at 2306.

[17] U.S. CONST. amend. IV.

[18] *Marron v. United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 76 (1927).

11

executing the warrant."[19]

The State argues that "a search warrant authorizing the search of a defined premises also authorizes the search of containers found on that premises which reasonably might conceal items listed in the warrant, regardless of whether separate acts of entry or opening may be required." The State relies on an Eighth Circuit case, *United States v. Johnson*,[20] to support its argument that the police were authorized to seize, remove, and later open a safe not named in the warrant.

James Wayne Johnson was indicted on three counts of receiving firearms previously shipped or transported in interstate commerce while a convicted felon and on one count of possessing firearms in or affecting commerce while a convicted felon.[21] Johnson waived a jury trial, and the district court tried the case on the basis of stipulated facts.[22]

On appeal, Johnson argued, among other things, that the officers searching his residence had no authority to remove a floor safe from his

---

[19] *Id.*

[20] 709 F.2d 515 (8th Cir. 1983) (per curiam).

[21] *Id.* at 516.

[22] *Id.*

bedroom and later open it at the police station without his consent.[23] Johnson was present when the officers found the safe and refused to open it for them at the time of discovery.[24] That safe contained two of the weapons used to convict Johnson.[25]

The Eighth Circuit rejected Johnson's contention, pointing out that "[a] search warrant authorizing the search of defined premises also authorizes the search of containers found on that premises which reasonably might conceal items listed in the warrant."[26] Because the officers were authorized to open the safe under the warrant when they discovered it at the house, the court held that they did not need a second warrant to complete the search of the safe at the police station later.[27]

Unlike Powell, Johnson stipulated to the evidence before the trial court, including the location of the floor safe within the premises described by the warrant.[28] Johnson complained of the sufficiency of the evidence, the propriety

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

13

of taking without his consent a safe that was properly discovered pursuant to a warrant to the police station before opening it, and the adequacy of the affidavit supporting the warrant.[29]

Unlike the trial court in the case before us, the *Johnson* court ruled that

> Johnson's possession of each of the weapons listed in the indictment reasonably could be inferred from the stipulated facts considered by the district court. In particular, the California informant would have testified that she saw Dale Nelson, Johnson's nephew, "return" a weapon similar to that listed in Count I to Johnson during the informant's visit at the Johnson residence in February of 1982. During that same visit, she saw Johnson exercise personal control over the floor safe in which the officers found the weapons listed in Counts II and III.[30]

Unlike the evidence in the *Johnson* case, nothing in the evidence in the case before us shows that Powell exercised control over either safe seized by the police. No evidence showed where the safes were found, that the safes were connected to Powell, that either safe was the safe referred to in the affidavit, or the age or size of the safes. Consequently, we cannot say that the trial court erred by concluding that the seizure and opening of the safes exceeded the scope of the warrant. We overrule the State's third point.

---

[29] *Id.*

[30] *Id.* at 516–17.

14

**DID AN EXCEPTION TO THE WARRANT REQUIREMENT APPLY?**

In its fourth point, the State contends that the trial court erred by granting Powell's motion to suppress because the police were not required to get another warrant before opening the seized safes. As we held above, the original warrant did not justify the seizure. But law enforcement officers may seize property that has not been "particularly described" in the warrant if the State can show an exception to the warrant requirement.[31] As the Texas Court of Criminal Appeals has explained,

> It has been very well settled that items in "plain view" may be seized by law enforcement personnel if each of the three conditions set forth in *Coolidge v. New Hampshire* are met. These conditions include: 1) the initial intrusion must be proper, in other words, that the police have a right to be where they are when the discovery is made; 2) the discovery of the evidence must be inadvertent; and 3) it must be "immediately apparent" to the police that they have evidence before them (i.e. probable cause to associate the property with criminal activity). However, the United States Supreme Court has recently modified the criteria in that "inadvertence" is no longer a necessary condition of a legitimate "plain view" seizure.[32]

Consequently, to fall within the plain view warrant exception, the State must show that (1) the police officer had legal authority to be in the place

---

[31]⬆ *Marron*, 275 U.S. at 196, 48 S. Ct. at 76; *see also Horton*, 496 U.S. at 139–40, 110 S. Ct. at 2309.

[32]⬆ *State v. Haley*, 811 S.W.2d 597, 599 (Tex. Crim. App 1991) (citations omitted).

15

where he viewed the safes and was legally able to access them; (2) the safes were in plain view; and (3) the incriminating character of the safes was immediately apparent.[33]

Hobbs testified that Lowery "mentioned the safes and that she believed that some of the checks were possibly kept in the safe." He also testified,

> Q. The two safes that you talk about, Lisa Lowery talked about those and you included some of the information on those in the affidavit, didn't you?
>
> A. Yes, sir.
>
> Q. And, in fact, the safes that she refers to, as you put in the affidavit, those were stolen, right?
>
> A. Yes, sir.

At a hearing on a motion to suppress, "the trial judge is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. He is authorized to believe or not believe any or all testimony of witnesses for either the State or the defendant."[34] If the State had prevailed below, we would presume that the trial court took Hobbs's testimony as true. But in the case now before this court, we make no such presumption, especially

---

[33] *See Horton*, 496 U.S. at 136–37, 110 S. Ct. at 2308.

[34] *Dalgleish v. State*, 787 S.W.2d 531, 534 (Tex. App.—Beaumont 1990, pet. ref'd) (citing *Mattias v. State*, 731 S.W.2d 936, 939 (Tex. Crim. App. 1987)).

in light of the fact that the trial court noted that its ruling was based on the evidence and credibility of the witnesses. Because the trial court announced that the suppression ruling was based on the credibility of the witnesses, we do not presume that the trial court found the sole witness credible.

As Powell reminds us, although the State repeatedly used the plural, "safes," in questioning Hobbs, only a single safe is mentioned in his affidavit. Thus, Hobbs's testimony about two safes directly conflicted with his affidavit. When, therefore, Hobbs testified that Lowery had told him that she believed that some of the checks were possibly kept in the safe, it is entirely plausible that the trial court found this testimony not credible, especially in light of the fact that it appears nowhere in the affidavit.

Perhaps the trial court did not believe that Lowery had spoken of two safes, especially because Hobbs mentioned only one safe in his affidavit. Perhaps the trial court did not believe that Lowery had said that "some of the checks were possibly kept in the safe," especially because Hobbs did not mention this important information in his affidavit. Perhaps the trial court did not believe Hobbs's additional testimony that, in his experience, people who are making forged checks have safes, especially because the officer did not mention this information in his affidavit and did not list a safe as property that he sought to seize.

17

Although Hobbs testified that he seized the safes when he executed the warrant, he did not testify that they were in a place that the warrant authorized him to search. Perhaps the trial court was not convinced that the State had sustained its burden to prove by a preponderance of the evidence that the officers were lawfully in the place where they actually found the safes. Hobbs did not testify where or under what circumstances he found the safes. We do not know how large, how old, or what brand the safes were. We, therefore, cannot know that the trial court believed that it was immediately apparent that either of the safes was the one that Lowery had claimed to have purchased and was, therefore, considered stolen. It is possible that at least one of the safes was the right size to hold checks because Hobbs testified that the police found checks in one, but because of the trial court's ruling, we cannot know whether the trial court believed that the police did find checks there.

Consequently, based on the standard of review that we must follow, we hold that the trial court could have properly found that the State did not prove that the "plain view" exception applied. As a result, the seizure and later search of the safes were illegal; a new warrant would have been necessary to justify them. The trial court therefore did not err by suppressing the evidence on this ground. We overrule the State's fourth point and do not reach its first

18

two points.[35]

**CONCLUSION**

Having overruled the State's third and fourth points without reaching its

first two points, we affirm the trial court's order suppressing the evidence.


LEE ANN DAUPHINOT
JUSTICE

PANEL A:   CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

PUBLISH

DELIVERED: June 5, 2008

---

[35] *See* TEX. R. APP. P. 47.1.