

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1205-08

**THE STATE OF TEXAS**

**v.**

**ROBERT LEAHY POWELL, Appellee**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, KEASLER and HOLCOMB, JJ., joined. WOMACK, J., filed a concurring opinion in which JOHNSON and COCHRAN, JJ., joined. PRICE, J., filed a dissenting opinion.

### O P I N I O N

This case involves a lawful search of two safes preceded by a seizure of these safes. Appellee is charged with possession with intent to deliver more than 4 but less than 200 grams of methamphetamine. The events leading up to this charge began when the police received information that appellee was making forged checks in his home. The police obtained a warrant to search appellee's home and to seize, among other things, "checks and materials to make forged checks." While executing this search warrant at appellee's home, the police found two safes which no one

disputes the police could have lawfully searched since the safes could have contained "checks and materials for making forged checks."[1]  The police seized these two safes and took them to the police station where they searched them the next day and found in one of the safes the methamphetamine that is the subject of this prosecution.  The trial court and the court of appeals decided that the seizure of these two safes violated appellee's Fourth Amendment rights because these safes were not "particularly described" in the search warrant as items to be seized.  Accordingly, the trial court and the court of appeals decided that the methamphetamine had to be suppressed.  We will reverse.

The record reflects that Hurst Police officer James Hobbs developed information from a person named Lisa Lowery that appellee and another person named Leia McGee were making forged checks in a home where appellee and McGee lived with McGee's 83-year-old grandmother (Roberta).  Based primarily on information provided by Lowery, Hobbs prepared an affidavit in support of an application for a warrant to search the home.  Hobbs prepared this affidavit on January 29, 2004, and it recites: (1) that Lowery was at the home when appellee and McGee gave her forged checks to purchase various items, (2) that appellee and McGee had stolen some customer checks from Cingular Wireless, (3) that appellee and McGee were making forged checks on a computer at the home where Lowery also saw drugs, guns and counterfeit money, (4) that Lowery had used forged checks furnished by appellee and McGee to buy a big-screen television at a Sam's furniture store and a **safe** at a Home Depot, (5) that this big-screen television and this **safe** were in the home,

---

[1]

*See, e.g., United States v. Ross*, 456 U.S. 798, 820-21 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.  Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.") (Footnote omitted).

(6) that appellee was "currently in custody at Tarrant County Jail and no longer" at the home, (7) that McGee "has been arrested for Theft and DWI,"[2] and (8) that Roberta "was not involved."

Another section of the search-warrant affidavit described "property concealed and kept [at the home] in violation of the laws of Texas" as follows:

THERE IS AT SAID SUSPECTED PLACE AND PREMISES PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF TEXAS AND DESCRIBED AS FOLLOWS:

Numerous customers' checks stolen from Cingular Wireless.

Checks and materials to make forged checks.

Computers, printers and scanners for forging checks.

Big Screen JVC 32 inch flat screen Television Serial Number 16837227 JVC TV Stand model #RKC32DF4AS purchased with a counterfeit check Dated 01-22-04 for $974.15 From [sic] Sam's Furniture.

Lexmark Print Trio color jet printer purchased on January 24, 2004 for $99.99 with counterfeit check # 4957 from Express Computer Repair.[3]

On January 29, 2004, a magistrate issued a search warrant for the home "to there search for the property described in said Affidavit, and to seize the same." That same day, Hobbs and other police officers executed the search warrant and searched the home. The police seized two safes that were somewhere in the home. They took these safes to the police station. The next day a locksmith "drilled out the safes." The police found methamphetamine in one of the safes.

---

[2]

It is not clear whether this refers to some time in the past or whether McGee was also in jail when Hobbs prepared the search warrant affidavit.

[3]

The safe that Lowery bought at a Home Depot with a forged check is not listed in this part of the search-warrant affidavit, although the big-screen television that she bought with a forged check at a Sam's furniture store is listed.

Appellee was charged with possession with intent to deliver more than 4 but less than 200 grams of methamphetamine. Appellee filed a written motion to suppress. This motion stated that in "one of the safes [seized from the home] the methamphetamine made the basis of this case was found." This motion further stated that "there was insufficient probable cause on the face of the affidavit to justify the search warrant and that the scope of the warrant was exceeded."

The trial court held a suppression hearing at which the search warrant and Hobbs' search-warrant affidavit were introduced into evidence. Hobbs, who was the only witness to testify at the suppression hearing, testified that Roberta was the only adult at the home when the police "originally arrived" to execute the search warrant.

Q. [STATE]: And was there a grandparent that was staying there at the time?

A. [HOBBS]: Roberta McGee, the grandmother, was there when we arrived.

Q. Any other persons that were–well, was she the only owner of [the home] that was there at the time, the grandmother?

A. As far as we knew, when we originally arrived, she was the only one there, the adult there. She met us outside.

The suppression-hearing record is silent on why the police took the safes to the police station to search them there. This record is also silent on whether one of the two safes seized from the home was the safe that Lowery bought at a Home Depot with a forged check. This record is also silent on which safe contained the methamphetamine.[4]

––––––––––––––––––––––––

[4]

The suppression-hearing record also reflects that the police found "checks" in at least one of the safes. Hobbs testified at the suppression hearing:

Q. [STATE]: And is a safe a place, in your experience, where persons who are committing these offenses might hide some of the evidence like extra checks or whatnot?

Appellee claimed in final arguments to the trial court at the suppression hearing that the police exceeded the scope of the warrant when "they grabbed two safes, went back to Hurst, let them sit overnight, and then opened them . . . ." The State responded that "[i]f they could have looked at it out there at the scene, they could have seized it and brought it back into the police department."

> [STATE]: Secondly, as far as the safe goes, I mean, this detective testified that's where these people hide this stuff. They had a right to search wherever to find these sorts of things, whether it's in a safe, a wall safe, a floor safe, or a safe that they removed. If they could have looked at it out there at the scene, they could have seized it and brought it back into the police department.
>
> Additionally, the State would argue that's stolen property, and that's not an interest, a legitimate expectation of privacy that society is prepared to recognize.
>
> [THE COURT]: You want one more time, too?
>
> [DEFENSE]: Your Honor, there's nothing in that affidavit that shows both of those safes were stolen property. They took two safes. They mention one, they took two, let them sit overnight and drilled them out.

The trial court subsequently signed an order granting appellee's motion to suppress. This order recites that the trial court made its ruling after "[h]aving considered the evidence and the credibility of the witnesses." On the State's direct appeal from this ruling, the court of appeals decided that the seizure of the two safes exceeded the scope of the warrant, because these safes were not "particularly described" in the warrant as items to be seized resulting in their seizure to have been "warrantless," and that the evidence, viewed in the light most favorable to the trial court's ruling granting appellee's motion to suppress, supports a ruling that this warrantless seizure of the safes cannot be justified under the "plain-view" exception to the warrant requirement. *See State v.*

---

A. [HOBBS]: Yes, sir, and that's what I believed on this occasion and that that's where we found checks.

*Powell*, 268 S.W.3d 626, 630-32 (Tex.App.–Fort Worth 2008).[5]  We granted the State's petition for

discretionary review which presents the following four grounds for review.

> 1. Did the Court of Appeals err by holding that the search and seizure of the locked safe(s) found on Appellee's premises was not within the scope of the search which was supported by a search warrant based on probable cause?[6]

> 2. Did the Court of Appeals err in concluding that a locked safe(s) could not be seized, notwithstanding it could be reasonably concluded that it was a repository for forged checks and other fruits which were listed to be seized pursuant to a search warrant based upon probable cause?

> 3. Did the Court of Appeals err in failing to utilize the correct analytical construct appropriate to items seized and not listed to be seized in a search warrant based on probable cause and issued pursuant to TEX. CODE CRIM. PROC. ANN. art. 18.02(1), (8), (9) and (12)?[7]

---

[5]

*See Katz v. United States*, 389 U.S. 347, 357 (1967) (warrantless searches and seizures are *per se* unreasonable under Fourth Amendment subject to specifically established and well delineated exceptions); *see also Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) ("plain-view" exception to warrant requirement permits police to seize an object if the police are lawfully in a position from which they view the object and its incriminating character is "immediately apparent"); *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) (example of "plain-view" exception to warrant requirement "is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character"); *Keehn v. State*, 279 S.W.3d 330, 335 (Tex.Cr.App. 2009).

[6]

We express no opinion on whether the search warrant was supported by probable cause as the court of appeals did not address that issue.  *See Powell*, 268 S.W.3d at 627 (noting that State's first two points of error pertained to the issue of probable cause to support the search warrant) and at 634 (finding it unnecessary to address State's first two points of error).

[7]

Article 18.02, subsections (1), (8), (9) and (12), provide that a search warrant may be issued to search for and seize: (1) property acquired by theft or in any other manner which makes its acquisition a penal offense; (8) any property the possession of which is prohibited by law; (9) implements or instruments used in the commission of a crime; or (12) contraband subject to forfeiture under Chapter 59 of this Code.  We further note that Article 18.01(d), TEX. CODE CRIM. PROC., provides that "[o]nly the specifically described property or items set forth in a search warrant issued under Subdivision (10) of Article 18.02 of this code or property, items or contraband enumerated in Subdivisions (1) through (9) or in Subdivision (12) of Article 18.02 of this code may

4. Did the Court of Appeals implicitly hold the plain-view doctrine was inapplicable because the officer executing the search warrant seized "mere evidence," *i.e.*, the locked safe(s), not listed as an item to be searched or seized in the warrant supported by probable cause.

I.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. The Fourth Amendment's "particularity" requirement is primarily meant to prevent general searches and the seizure of one thing under a warrant that describes another thing to be seized. *See Marron v. United States*, 275 U.S. 192, 196 (1927).

Appellee argues that the safes were not particularly described in the warrant as items to be seized and that their seizure, therefore, exceeded the scope of the warrant rendering their seizure warrantless[8] which, on this record, cannot be justified by any exigency. Appellee argues that "[w]hile it would have been proper for the police to open those safes while still on the premises, actually seizing the safes for future opening off of the premises was improper."

The general Fourth Amendment rule is that the police cannot seize property that is not particularly described in a search warrant.[9] This general rule is subject to "limited exception[s]" for

be seized."

[8] We believe this to be a question of law based on an examination of the warrant and the affidavit in support of the warrant.

[9] *See Marron*, 275 U.S. at 196 (the requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one

various exigencies that require or make it reasonable for the police to seize this not-described-in-the-warrant property (e.g., the owner of a not-described-in-the-warrant locked safe, which the police may lawfully search pursuant to a search warrant, refuses to unlock the safe). *See* WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT §4.11(a) (4th ed. 2004) (there are cases in which it will be quite reasonable for police to remove a container, such as a computer or a file cabinet containing voluminous documents, from the scene of the search so that opening it and examining it can be more readily accomplished elsewhere but this is "a limited exception to the general rule that a search warrant does not give police license to *seize* personal property not described in the warrant on the ground that such property *might* contain items that the warrant does describe; it only allows police to *search* such property at the place where the warrant is being executed") (emphasis in original, internal quotes omitted);[10] *see also United States v.*

_____

thing under a warrant describing another).

[10]

*See also United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir. 1997) (wholesale seizure of file cabinets and miscellaneous papers and property not specified in the search warrant did not "grossly exceed" the warrant when the officers' conduct "was motivated by the impracticability of on-site sorting and the time constraints of executing a daytime search warrant" and the "ten broad categories of records" described in the warrant "were present in every drawer of the file cabinets"); *United States v. Blakeney*, 942 F.2d 1001, 1027-28 n.13 (6th Cir. 1991) (seizure of suitcase not described in warrant upheld because it included items that were described in the warrant among items not described in the warrant; thus, "where circumstances, such as these, make it impracticable to inventory and record at the site of the search the numerous contents of the suitcase which contained incriminating evidence, the seizure of irrelevant items within the suitcase along with the relevant items does not violate the fourth amendment, provided the irrelevant items are returned to Blakeney"); *United States v. Shilling*, 826 F.2d 1365 (4th Cir. 1987) (overbroad seizure of records prompted by legitimate practical concerns of keeping documents intact and preventing loss, rather than by governmental intent to engage in fishing expedition) *overruled on other grounds by Staples v. United States*, 511 U.S. 600 (1994) *as stated in United States v. Starkes*, 32 F.3d 100, 101 (4th Cir. 1994); LAFAVE, *supra*, §4.6(a) (*Marron* is misleading "to the extent that it suggests that the police may never seize an object unless it is named in the warrant") and §4.11(a) (describing situations where police may "overseize" or seize an object not particularly described in a warrant).

*Johnson*, 709 F.2d 515, 516 (8th Cir. 1983) (while executing a search warrant authorizing seizure of weapons, police seized not-described-in-the-warrant locked floor safe after defendant refused to open it).

The State nevertheless claims, as it did at the suppression hearing, that "[o]fficers searching the premises for checks and materials to make forged checks . . . properly seized and searched the safes discovered at the premises because it was reasonable for the officers to believe that the safes could contain the items sought." This argument is contrary to the plain language of the Fourth Amendment that authorizes police to seize only the items described in a search warrant. It does not authorize, in the usual case, the police to seize not-described-in-the-warrant containers even though the police may lawfully search these containers on the premises pursuant to the warrant.

The Eighth Circuit Court of Appeals' decision in *United States v. Robbins*[11] illustrates this. In *Robbins*, the police seized, during a search of the defendant's business, the defendant's not-described-in-the-warrant wallet that the police could have lawfully searched on the premises because it could have contained described-in-the-warrant items. *See Robbins*, 21 F.3d at 298-301. The wallet was not searched until the middle of the defendant's trial and found to contain described-in-the-warrant items. *See id*. The Eighth Circuit decided that the seizure of the wallet violated the Fourth Amendment and characterized an argument, very similar to the one made by the State in this case that the police properly seized the wallet because they could have searched it, as "a fundamental misapprehension of Fourth Amendment law." *See Robbins*, 21 F.3d at 300. The Eighth Circuit wrote:

---

[11]

21 F.3d 297 (8th Cir. 1994).

In essence, the government's argument is that because the warrant authorized officers to *search* inside the wallet, it also authorized them to *seize* the wallet. This argument is a fundamental misapprehension of Fourth Amendment law. The record shows that the government did not discover the notes until it searched the wallet in the middle of Robbins' trial, months after it seized the wallet from his business. The threshold issue is whether officers were entitled to seize the wallet in the first place. The general rule, of course, is that police may only seize items described in the search warrant, absent an exception to the warrant requirement. Simply put, we believe that officers did not have authority to seize the wallet because the wallet itself was not an item described in the search warrant.

That items described in the warrant were *ultimately* found in the wallet does not justify the initial seizure. A search warrant does not give the police license to *seize* personal property not described in the warrant on the ground that such property *might* contain items that the warrant does describe; it only allows police to *search* such property at the place where the warrant is being executed if the property "legitimately might contain the [items] specified in the warrant," and *then* to seize the described items they find inside or, under certain circumstances, the property itself once it is found to contain described items, *see United States v. Beusch*, 596 F.2d 871, 876-77 (9th Cir. 1979) (holding that officers could seize entire ledgers once they discovered that some of the individual pages matched warrant description; officers need not examine the entire ledger on the spot and then remove relevant individual pages).

*See id.* (emphasis in original, footnotes and citations to other authorities and to record omitted).

The suppression-hearing record reflects that the State made no attempt to establish a "limited exception" to the general Fourth Amendment rule that the police may not lawfully seize not-described-in-the-warrant property and it apparently litigated the issue concerning the legality of the police seizure of the safes based solely on its interpretation of Fourth Amendment law that "[i]f they could have looked at it out there at the scene, they could have seized it and brought it back into the police department." This might explain why the record is silent on why the police seized the safes and whether the seizure of the safes was justified by some exigency such as, for example, that there was no one at appellant's home who could have opened the locked safes.[12]

---

[12]

With the State having lost in the trial court, we further note that whatever record evidence

Notwithstanding the foregoing, we do not agree with the court of appeals' decision and the State's concession that the safe that Lowery bought at a Home Depot with a forged check was not particularly described in the warrant as property to be seized. *See Powell*, 268 S.W.3d at 631 ("A safe is mentioned in the [search warrant] affidavit, not as property to be seized, but as part of Hobbs's basis for probable cause: 'Lisa Lowery also told me that [appellant] and [McGee] gave her another check #4961 in the name of Augustine Terrell for $199.14 to go to Home Depot to purchase a safe for them. Lisa Lowery advised that the safe is at [the Premises].'"). The search warrant that was issued by the magistrate authorized the police to enter appellee's home "to there search **for the property described in the affidavit,** and to seize the same and bring the same before me." (Emphasis supplied). The safe that Lowery bought at a Home Depot with a forged check was "property described in the affidavit." The police, therefore, could have seized the two safes they found in the home because they could have reasonably believed that one of the safes was the one that Lowery bought at a Home Depot with a forged check and that Lowery said was in the home.[13] *See*

_____

there might be that would support a finding that the seizure of the safes fell within a "limited exception" to the general rule would have to be viewed in the light most favorable to the trial court's ruling in favor of appellee. *See State v. Kelly*, 204 S.W.3d 808, 818 n.19 (Tex.Cr.App. 2006). It has been suggested that the evidence that the police drilled out the safes at the police station permits an inference that they could not have opened the safes until this time and that their seizure, therefore, falls within a "limited exception" to the general rule. Appellee claimed during oral argument that it might be permissible for this Court and the court of appeals to supply such an inference had the State won in the trial court. But, with the State having lost in the trial court, we believe that supplying such an inference would not be viewing the evidence in the light most favorable to the trial court's ruling in favor of appellee.

[13] The State also appears to argue that the safes could have been seized as described-in-the-warrant items because they are the "functional equivalent" of the described-in-the-warrant "checks and materials to make forged checks." We disagree that these items are functionally equivalent since we do not believe that even a broad construction of "checks and materials to make forged checks" would include "safes." *See United States v. Reyes*, 798 F.2d 380, 382-83 (10th Cir. 1986) ("seizure

Article 18.02. This decision on this question of law as to what items the search warrant authorized to be seized does not have the effect of converting the search in this case into a general search and it does not have the effect of authorizing the seizure of one thing under a warrant describing another. *See Marron*, 275 U.S. at 196 (Fourth Amendment requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another).

II.

In addition, assuming that the seizure of the safes by the police violated appellee's Fourth Amendment possessory rights in these safes,[14] we believe that the "massive" remedy of exclusion of the methamphetamine in this case is not required under the United States Supreme Court's

---

of a specific item characteristic of a generic class of items defined in the warrant did not constitute an impermissible general search"). In addition, the cases cited by the State do not support construing "checks and materials to make forged checks" to include "safes." *See, e.g., United States v. Hill*, 19 F.3d 984, 986-88 (5th Cir. 1994) (check stubs were functional equivalent of described-in-the-warrant cash disbursement journals); *United States v. Meriwether*, 917 F.2d 955, 957-58 (6th Cir. 1990) (seizure of pager, containing defendant's telephone number, within scope of warrant authorizing seizure of telephone numbers of customers and suppliers); *United States v. Word*, 806 F.2d 658, 661 (6th Cir. 1986) (day sheets, spiral patient-sign-in notebooks, patient hospital-admission records, and patient-encounter forms were functional equivalent of described-in-the-warrant payment records, appointment books, medical records, and other information regarding billing, patient diagnosis and treatment history); *Reyes*, 798 F.2d at 382-83 (seizure of cassette tape containing conversations about drug trafficking functional equivalent of described-in-the-warrant drug trafficking records, ledgers, or writings identifying cocaine customers); *United States v. Gomez-Soto*, 723 F.2d 649, 652-54 (9th Cir. 1984) (cassette tape functional equivalent of described-in-the-warrant items such as books, records, papers, documents and notations relating to or discussing drug transactions). We further note that Hobbs provided no testimony at the suppression hearing that he interpreted "checks and materials to make forged checks" to include the safes. *See United States v. Stiver*, 9 F.3d 298, 302 (3rd Cir. 1993) (officers executing a search warrant are "required to interpret it" and are "not obliged to interpret it narrowly") (internal quotes omitted).

[14] *See Horton v. California*, 496 U.S. 128, 133-34 (1990) (discussing difference between "searches" and "seizures" and noting that a "search" compromises the individual interest in privacy while a "seizure" compromises an owner's possessory interest).

decision in *Hudson v. Michigan*, which decided that the violation by the police of the knock-and-announce Fourth Amendment rule that preceded an otherwise lawful search of the defendant's home pursuant to a search warrant did not require exclusion of evidence that was found during the search. *See Hudson v. Michigan*, 547 U.S. 586, 594 (2006) ("What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant. Since the interests that *were* violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable.") (emphasis in original).[15] Appellee's interests that were allegedly violated in this case (his possessory and not his privacy interests in the safes) have nothing to do with the otherwise lawful search of the safes that resulted in the acquisition of the methamphetamine. *See id*.; *Horton*, 496 U.S. at 133-34.

The police could have lawfully searched the safes pursuant to the warrant before and after any unlawful seizure of them by the police.[16] It thus cannot be said that the timing of the search of

---

[15] We note that *Hudson* was decided after the suppression hearing in this case.

[16] We note that the search warrant in this case had no expiration date. Therefore, under the version of Article 18.07 in effect at the time of the search in this case, the time allowed for the execution of the search warrant was "three whole days, exclusive of the day of its issuance and the day of its execution." Under these circumstances, the search of the safes at the police station was a continuation of the initial lawful search. *See United States v. Squillacote*, 221 F.3d 542, 557-58 (4th Cir. 2000) (FBI agents' returning to search home on six consecutive days pursuant to a warrant was "reasonable continuations of the original search"); *United States v. Carter*, 854 F.2d 1102, 1107 (8th Cir. 1988) (upholding under single warrant a second search occurring several hours after initial search: "The authority of the warrant had not expired and therefore the return search was not beyond the scope of the Fourth Amendment."); *State v. Neesly*, 196 S.W.3d 356, 364 (Tex.App.–Houston [1st Dist.] 2006) (discussing cases whose overriding theme "is that each subsequent search is upheld on the same grounds that lawfully permitted the initial search," and "if the initial search was based on a warrant, the court found that that warrant carried over to the second search") *overruled on other grounds State v. Neesly*, 239 S.W.3d 780 (Tex.Cr.App. 2007).

the safes violated appellee's privacy interests in the safes. *See id.*[17] It also cannot be said that the police searched the safes and discovered the methamphetamine as a result of exploiting any unlawful seizure of the safes or that any unlawful seizure of the safes was even a "but-for" cause that led to the police searching the safes and discovering the methamphetamine.[18] *See Hudson*, 547 U.S. at 592-93 (". . . exclusion may not be premised on the mere fact that a constitutional violation was a but-for cause of obtaining the evidence. Our cases show that but-for causality is only a necessary, not a sufficient, condition of suppression. . . .Whether [the violation of the Fourth Amendment knock-and-announce rule] had occurred or *not*, the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house.") (emphasis in original and internal quotes omitted) and at 601 ("While acquisition of the gun and drugs was the product of a search pursuant to a warrant, it was not the fruit of the fact that the entry was not preceded by knock-and-announce."). We believe that this record, viewed in the light most favorable to the trial court's ruling in favor of appellee, fairly demonstrates that the police would have searched the safes whether or not they took them to the police station.[19] In this case, therefore, we are unable to conclude that

---

[17]

We also note that the invasion of appellee's privacy interests in the safes by the police search of the safes was exactly the same whether the police searched these safes at the home or at the police station. *See Horton*, 496 U.S. at 133-34 (a "search" compromises the individual interest in privacy while a "seizure" compromises an owner's possessory interest); *see also Hudson*, 547 U.S. at 593-94 (discussing Fourth Amendment interests vindicated by knock-and-announce requirement).

[18]

Absent a "but-for" causal connection between any unlawful seizure of the safes and the discovery of the methamphetamine, our state exclusionary rule in Article 38.23(a), TEX. CODE CRIM. PROC., also would not require exclusion of the methamphetamine.

[19]

Instead of taking the safes to the police station, the police and the safes could have remained at appellee's home until such time as the police could have had a locksmith come there and drill out the safes.

there is any causal connection between any unlawful seizure of the safes and the otherwise lawful search of the safes resulting in the acquisition of the methamphetamine by the police. This otherwise lawful search of the safes was "wholly unrelated" to any prior unlawful seizure of these safes.

The following discussion from Part IV of *Hudson*[20] of the Supreme Court's prior decision in *Segura v. United States*[21] further illustrates why the remedy of exclusion of the methamphetamine is not required in this case as a result of any unlawful seizure of the safes that may have occurred.

> Like today's case, *Segura* involved a concededly illegal entry. Police conducting a drug crime investigation waited for Segura outside an apartment building; when he arrived, he denied living there. The police arrested him and brought him to the apartment where they suspected illegal activity. An officer knocked. When someone inside opened the door, the police entered, taking Segura with them. They had neither a warrant nor consent to enter, and they did not announce themselves as police–an entry as illegal as can be. Officers then stayed in the apartment for 19 *hours* awaiting a search warrant. Once alerted that the search warrant had been obtained, the police–still inside, having secured the premises so that no evidence could be removed–conducted a search. We refused to exclude the resulting evidence. We recognized that only the evidence gained from the particular violation could be excluded, and therefore distinguished the effects of the illegal entry from the effects of the legal search: "None of the information on which the warrant was secured was derived from or related in any way to the initial entry into petitioner's apartment . . ." It was therefore "beyond dispute that the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence now challenged."
>
> If the search in *Segura* could be "wholly unrelated to the prior entry," when the only entry was warrantless, it would be bizarre to treat more harshly the actions in this case, where the only entry was *with* a warrant. If the probable cause backing a warrant that was issued *later in time* could be an "independent source" for a search that proceeded after the officers illegally entered and waited, a search warrant

---

[20]

We note that Part IV of *Hudson* is a plurality opinion which Justice Kennedy declined to join. *See Hudson*, 547 U.S. at 605 (Kennedy, J., concurring in part and concurring in the judgment) (joining parts I through III of Justice Scalia's lead opinion and concurring in the judgment with respect to part IV).

[21]

468 U.S. 796 (1984).

obtained *before* going in must have at least this much effect."

*See Hudson*, 547 U.S. at 600-01 (discussing *Segura*) (citations omitted and emphasis in original).

In this case, the methamphetamine was not obtained because the police may have unlawfully seized the safes but "because of a subsequent search pursuant to a lawful warrant." *See Hudson*, 547 U.S. at 592 (but-for causality is a necessary condition for application of exclusionary rule) and at 605 (Kennedy, J., concurring in part and concurring in the judgment) ("In this case the relevant evidence was discovered not because of a failure to knock and announce, but because of a subsequent search pursuant to a lawful warrant."). We, therefore, decide that the "massive" remedy of exclusion of the methamphetamine is not required in this case. We believe that, as the defendant's remedy in *Hudson* was a civil suit for damages for his broken door, any remedy that appellee might have is also a civil suit for damages for his alleged unlawfully seized safes. *See Hudson*, 547 U.S. at 596-99.

The judgment of the court of appeals is reversed, and the case is remanded there for further proceedings not inconsistent with this opinion.

Hervey, J.

Delivered: March 3, 2010
Publish