

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1095-12

**THE STATE OF TEXAS**

**v.**

**ANTHONY GRANVILLE, Appellee**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### WALKER COUNTY

**KELLER, P.J., filed a concurring opinion in which PRICE, J., joined.**

The Supreme Court's Fourth Amendment "expectation of privacy" jurisprudence began with a case involving a phone.[1]  We have now come full circle, with a phone again being the center of a Fourth Amendment controversy.  Instead of the government intercepting a voice conversation, as occurred in *Katz*, we are confronted with the government inspecting a digital photograph stored electronically.  I agree with the Court that appellee had a subjective and reasonable expectation of privacy with respect to the electronic data stored on his cell phone.  I write separately to further

---

[1] *Katz v. United States*, 389 U.S. 347 (1967).

explore why appellee had an actual subjective expectation of privacy in this case.

In considering whether appellee had a subjective expectation of privacy, I follow the Supreme Court's lead in eschewing the rubric of "standing" as unhelpful and potentially confusing with respect to the issue before us.[2] The questions are, simply, (1) did appellee have an actual subjective expectation of privacy with respect to electronic data stored on his cell phone and (2) would society recognize such expectation as reasonable? In this case, I focus only on the first question.

Appellee's right to possess the cell phone and his actual possession of the phone on his person were enough to establish his subjective expectation of privacy, at the time of his possession, with respect to information that was not on public display.[3] We can infer that the photograph in question was not on public display because the police were not aware of it at the time the cell phone was taken from appellee (when he was booked into jail) and because the phone was turned off at

---

[2] *Rakas v. Illinois*, 439 U.S. 128, 138-40 (1978) ("[T]he question necessarily arises whether it serves any useful analytical purpose to consider this principle a matter of standing, distinct from the merits of a defendant's Fourth Amendment claim. We can think of no decided cases of this Court that would have come out differently had we concluded, as we do now, that the type of standing requirement discussed in *Jones* and reaffirmed today is more properly subsumed under substantive Fourth Amendment doctrine. Rigorous application of the principle that the rights secured by this Amendment are personal, in place of a notion of 'standing,' will produce no additional situations in which evidence must be excluded. The inquiry under either approach is the same. But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing. The Court in *Jones* also may have been aware that there was a certain artificiality in analyzing this question in terms of standing because in at least three separate places in its opinion the Court placed that term within quotation marks . . . . [T]his Court's long history of insistence that Fourth Amendment rights are personal in nature has already answered many of these traditional standing inquiries, and we think that definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.")

[3] *See New Jersey v. T.L.O.*, 469 U.S. 325, 337-38 (1985) ("A search of a child's person or of a closed purse or other bag carried on her person, no less than a similar search carried out on an adult, is undoubtedly a severe violation of subjective expectations of privacy.").

the time Officer Harrell retrieved it from the jail property room.[4]

The remaining issue is whether appellee lost his subjective expectation of privacy when he lost possession of his cell phone. Had appellee abandoned his phone, he would have relinquished any expectation of privacy in the data stored therein.[5] Had he relinquished his phone to the police by his own consent, the question would be the scope of that consent.[6] But appellee was required to relinquish his phone; his loss of possession was involuntary. As I discuss below, the proper question when dispossession of an item is involuntary is as follows: To what extent has appellee's subjective expectation of privacy already been frustrated (by actions that do not themselves violate the Fourth Amendment)?

In *United States v. Jacobsen*, the Supreme Court addressed a situation in which a defendant's subjective expectation of privacy was frustrated by the actions of a non-governmental entity.[7] A private freight carrier opened a damaged package and observed plastic bags containing a white powdery substance.[8] The carrier's agents placed the plastic bags back into the package and contacted the Drug Enforcement Administration (DEA).[9] A DEA agent subsequently reopened the package,

---

[4] I need not decide whether the inference that the photograph was not on public display is one that must be drawn as a matter of law or is one that simply may be drawn as a matter of fact. The trial court ruled in appellee's favor (and issued favorable findings of fact and conclusions of law), so the evidence is viewed in the light most favorable to appellee's position. *State v. Powell*, 306 S.W.3d 761, 768 n.12 (Tex. Crim. App. 2010); *State v. Kelly*, 204 S.W.3d 808, 818 & n.19 (Tex. Crim. App. 2006).

[5] *See* Court's op.

[6] *See Florida v. Jimeno*, 500 U.S. 248 (1991).

[7] 466 U.S. 109 (1984)

[8] *Id.* at 111.

[9] *Id.*

opened the plastic bags, removed a trace amount of the white powder from each bag, and conducted a field test for cocaine.[10] The field test yielded positive results.[11]

The Supreme Court observed that a search by a private party does not violate the Fourth Amendment.[12] The Court then held that "additional invasions of . . . privacy by the Government agent must be tested by the degree to which they exceeded the scope of the private search."[13] The Supreme Court derived this standard from its earlier decision in *Walter v. United States*,[14] despite *Walter* being a fractured decision, with no single opinion of the Court.[15] The *Jacobsen* court further concluded that the Fourth Amendment is implicated only if "the authorities use information with respect to which the expectation of privacy has not already been frustrated."[16] The Court concluded that the private carrier's act of opening the package had already frustrated the defendant's privacy interest in the package's contents at the time the DEA agent performed his own visual inspection pursuant to the carrier's invitation.[17] The only remaining question was whether the field test was

---

[10] *Id.* at 111-12 & n.1.

[11] *Id.* at 112.

[12] *Id.* at 113, 115 ("This Court has also consistently construed this protection as proscribing only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.") (internal quotation marks omitted).

[13] *Id.* at 115.

[14] 447 U.S. 649 (1980).

[15] *Jacobsen*, 466 U.S. at 115-17.

[16] *Id.* at 117.

[17] *Id.* at 119-20.

permissible.[18] The field test could disclose only whether the white powder was a certain species of contraband (cocaine), which the defendant had no legitimate interest in privately possessing.[19] Because the field test could reveal "no other arguably 'private' fact," the test "compromise[d] no legitimate privacy interest."[20]

*United States v. Edwards*[21] and *Oles v. State*[22] can be viewed as cases in which a defendant's privacy interests have largely been frustrated as a result of his legal arrest and incarceration in the jail. Any privacy interest that might exist in such a defendant's clothing has been frustrated because the police acquired physical custody of the defendant and the right to handle the defendant's clothing. When we said in *Oles* that "there is virtually no evidence that [the defendant] harbored a subjective expectation of privacy in his clothing that was in the custody of the police,"[23] we essentially recognized that reality.

But *Edwards* and *Oles* differ from the present case because a defendant's privacy interest in clothing, to the extent it exists at all, has a purely physical dimension. A defendant's clothes may contain incriminating items in pockets or biological evidence might be discovered on the surface. But clothing is not a computer or a DVD or a cell phone. These latter items are designed to contain information apart from their physical characteristics.

---

[18] *Id.* at 122.

[19] *Id.* at 122-23.

[20] *Id.* at 123.

[21] 415 U.S. 872 (1987).

[22] 993 S.W.2d 103 (Tex. Crim. App. 1999).

[23] *Id.* at 110-11.

There is an analogous case from the Supreme Court involving a search of film—the *Walter* case, relied upon by the Supreme Court in *Jacobsen*. In *Walter*, a package containing 871 boxes of 8-millimeter film was delivered to the wrong corporation.[24] One side of the boxes had sexually suggestive drawings, while the other side had explicit descriptions of the contents.[25] Employees of the corporation opened the package, opened one or two of the boxes, and attempted without success to view portions of the film by holding it up to the light.[26] The employees then called a Federal Bureau of Investigation (FBI) agent, who picked up the packages.[27] Without attempting to obtain a warrant, FBI agents viewed the films with a projector.[28]

A majority of the Supreme Court reversed.[29] In his opinion announcing the judgment of the Court, Justice Stevens concluded that the defendants' privacy interest with respect to the descriptive labels on the boxes had been frustrated by a private party (the corporation) but that the defendants' expectation of privacy in the content of the films had not been frustrated.[30] Consequently, the FBI violated the Fourth Amendment when its agents played the films without securing a warrant.[31]

---

[24] *Walter*, 447 U.S. at 651.

[25] *Id.* at 652.

[26] *Id.* at 651-52.

[27] *Id.* at 652.

[28] *Id.*

[29] *Id.* at 653-60 (op. of Stevens, J., joined by Stewart, J.); *id.* at 660 (Marshall, J., concurring in the judgment without opinion); *id.* at 660-62 (White, J., concurring, joined by Brennan, J.).

[30] *Id.* at 658 (op. of Stevens, J.) ("The private search merely frustrated that expectation in part. It did not simply strip the remaining unfrustrated portion of that expectation of all Fourth Amendment protection.").

[31] *Id.*

Justice Stevens refrained from deciding whether the FBI would have been required to obtain a warrant "had the private party been the first to view" the films.[32] Justice White wrote separately to disagree with the suggestion that the FBI could have played the films without a warrant if the private corporation had done so first.[33] The dissent, on the other hand, contended that the defendants had no remaining expectation of privacy.[34] In the dissent's view, the sexually explicit nature of the drawings and labels on the boxes "clearly revealed the nature of their contents."[35]

Although *Walter* was a fractured decision, it contains controlling authority because (1) a majority of the Court reversed the case, which could have happened only as a result of finding a Fourth Amendment violation, (2) the Court remanded another case for reconsideration in light of *Walter*,[36] and (3) the Court relied heavily upon *Walter* in *Jacobsen*.[37] What *Walter* shows is that some types of property have both a physical dimension and an informational dimension and that a defendant's subjective expectation of privacy can attach to either or both. Even if a defendant's subjective expectation of privacy has been entirely frustrated with respect to the physical dimension of such property, he may yet retain a subjective expectation with respect to the informational dimension.

---

[32] *Id.* at 657 n.9.

[33] *Id.* at 660 (White, J., concurring).

[34] *Id.* at 663 (Blackmun, J., dissenting, joined by Burger, C.J., and by Powell and Rehnquist, J.J.)

[35] *Id.*

[36] *Grassi v. United States*, 448 U.S. 902 (1980).

[37] *See Jacobsen*, 466 U.S. at 113-14 & n.6, 114 n.7, 115-117 & nn.11, 12, 120 n.18.

In the present case, the police department's legitimate physical control of appellee's cell phone frustrated his expectation of privacy with respect to the physical aspects of the cell phone. As the Court explains, the State could have tested it for fingerprints or DNA. And perhaps the State could have looked in the battery compartment or the memory slot for hidden contraband. But the State's legitimate physical control of the cell phone did not compromise appellee's expectation of privacy with respect to the electronic data stored on the phone, just as the FBI's legitimate physical control over the film in *Walter* did not compromise the defendants' subjective expectations with respect to the video content of that film.

With these comments, I join the Court's opinion.

Filed: February 26, 2014
Publish