Affirmed and Memorandum Opinion
filed October 14, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00597-CR



Jason Arnell
Ferguson, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 176th District Court

Harris County, Texas

Trial Court Cause
No. 1128391



 

MEMORANDUM OPINION 

            A
jury found the appellant, Jason Arnell Ferguson, guilty of murder and the trial
court sentenced him to eight years’ confinement in the Institutional Division
of the Texas Department of Criminal Justice.  In a single issue, Ferguson
contends the trial court erred in denying his motion to suppress and admitting
evidence illegally seized from his automobile.  We affirm.




I

            Sometime
around midnight on August 6, 2007, Ferguson shot and killed Quintin Jack at the
Arbor Square Apartments over a disagreement about money.  A few hours later,
Ferguson was seen at the apartments by a worker who had previously issued
multiple trespass warnings to him.  The police were called, and Ferguson was
arrested for trespassing.  Sergeant Richards, the arresting officer, questioned
Ferguson to determine whether he had a vehicle parked on the property that
needed to be towed.

            Attempting
to distance himself from his vehicle—in which he had earlier hidden the murder
weapon—Ferguson told Richards that his vehicle was in the shop.  He then told
Richards that he drove an Oldsmobile, when in fact he drove a Volvo. 
Ultimately, Richards located Ferguson’s Volvo, which was parked across the
street from Arbor Square at the Sandpiper Apartments.  Richards had the car
impounded.

            The
day after being arrested for trespassing, Ferguson was interviewed by Officer
Chappell of the homicide division of the Houston Police Department, who was
investigating Jack’s shooting.  After confessing to killing Jack, Ferguson gave
written consent to search his car.  Ferguson told Chappell where in the car the
murder weapon was located.  A subsequent search of Ferguson’s car uncovered the
murder weapon, a nine-millimeter handgun, where Ferguson said it would be.  

            Both
Officers Richards and Chappell testified at Ferguson’s trial.  Among other
things, they testified that they did not believe they had probable cause to
search Ferguson’s car.  During Chappell’s direct examination, Ferguson’s
attorney moved to suppress all evidence found in Ferguson’s car on the grounds
that the car was illegally seized and searched based on only the officers’
“hunch” that the vehicle might contain evidence of Jack’s murder.  The trial
court denied the motion.




II

A

            We
review the trial court’s ruling on a motion to suppress under an abuse-of-discretion
standard.  State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). 
We view the record in the light most favorable to the trial court’s ruling and
will reverse only if the ruling is outside the zone of reasonable
disagreement.  Id.  We give almost total deference to the trial court’s factual
determinations, especially those based on an evaluation of the witnesses’
credibility and demeanor.  Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).  We review de novo the trial court’s application of the law
of search and seizure to the facts.  Wiede v. State, 214 S.W.3d 17, 25
(Tex. Crim. App. 2007).  When the trial court has not made findings of fact, we
imply findings that support the court’s ruling if the findings are supported by
the record.  State v. Ross, 32 S.W.3d 853, 855–56 (Tex. Crim. App.
2000).  We will sustain the trial court’s ruling “if it is reasonably supported
by the record and is correct on any theory of law applicable to the case.”  Dixon,
206 S.W.3d at 590.

B

            Ferguson
contends the evidence found in his vehicle should be suppressed under the
federal and state constitutions as the fruit of an unreasonable seizure and
search conducted without probable cause.  Ferguson does not specify exactly
what evidence he contends should have been suppressed, but we will assume he means
the nine-millimeter gun that he used to kill Jack.[1]  Given the
record evidence, however, the trial court could have reasonably concluded that
the seizure and search of Ferguson’s vehicle did not violate his constitutional
rights.  

            Ferguson
first argues that his vehicle was not lawfully impounded.  See South
Dakota v. Opperman, 428 U.S. 364, 375–76 (1976); Benavides v. State,
600 S.W.2d 809, 811 (Tex. Crim. App. 1980).  For an automobile to be lawfully
impounded, the seizure must be reasonable under the Fourth Amendment.  Benavides,
600 S.W.2d at 811.  Courts have identified a number of circumstances in which
law enforcement may reasonably impound an automobile, including the following: 
(1) the vehicle has been used in the commission of a crime; (2) an unattended
vehicle is abandoned, illegally parked, or otherwise endangering other traffic;
(3) the driver is incapacitated and unable to remove the vehicle; (4) the
driver is removed from his automobile, placed under custodial arrest, and his
property cannot be protected by any means other than impoundment.  Lagaite
v. State, 995 S.W.2d 860, 865 (Tex. App.—Houston [1st Dist.] 1999, pet.
ref’d) (citations omitted).  The State bears the burden to prove a lawful
impoundment.  Benavides, 600 S.W.2d at 811; Josey v. State, 981
S.W.2d 831, 842 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d).  

            Ferguson
contends that his car was legally parked in a private parking lot across the
street from where he was arrested for trespassing on foot, and so there was no
reasonable connection between his arrest and his car.  See Benavides,
600 S.W.2d at 811–12 (stating that for impoundment to be lawful, “there must be
some reasonable connection between the arrest and the vehicle”); see also
Gandy v. State, 835 S.W.2d 238, 243 (Tex. App.—Houston [1st Dist.] 1992,
pet. ref’d) (holding that that vehicle’s impoundment was proper because the
police “had not only a connection between the vehicle and the crime, but reason
to believe evidence of the crime might still be contained in the vehicle”). 
Ferguson also points out that the police officers admitted they lacked probable
cause to seize his car, and asserts they made the decision to impound his car
based on no more than a suspicion that the car might contain evidence of
criminal activity, which is unlawful.  See Colorado v. Bertine, 479 U.S.
367 (1987).  Consequently, Fergusons contends, any evidence found during the
subsequent search of his car should have been suppressed as “fruit of the
poisonous tree.”  See Wong Sun v. United States, 371 U.S. 471, 484
(1963).

            In
response, the State contends that the officers’ testimony that they lacked probable
cause is not dispositive; the test for probable cause is objective and the
officers’ subjective beliefs are immaterial.  See Amador v. State, 275
S.W.3d 872, 878 (Tex. Crim. App. 2009); Wiede, 214 S.W.3d at 25.  To
demonstrate the existence of probable cause to seize Ferguson’s car, the State
points to the evidence that Ferguson was a suspect in a murder that occurred
just hours before his arrest at the same location where he was trespassing, he
was seen in his car within hours of being arrested, and he lied to the officers
about his ownership of a car that the officers knew could contain evidence of
the murder.  See Wynne v. State, 676 S.W.2d 650, 654–55 (Tex. App.—Fort
Worth 1984, pet. ref’d) (police need only a “reasonable connection” between the
vehicle and the offense apparently committed to justify impoundment).  

            We
need not resolve this issue, however, as we conclude Ferguson’s consent to the
search of his car sufficiently attenuated any taint from an allegedly illegal
seizure, and therefore the severe remedy of excluding the evidence is not
required.  See Hudson v. Michigan, 547 U.S. 586, 593–94 (2006); State
v. Powell, 306 S.W.3d 761, 769–70 (Tex. Crim. App. 2010).  Voluntary
consent to search is a well-established exception to the requirement of a
warrant and probable cause to search.  Gutierrez v. State, 221 S.W.3d
680, 686 (Tex. Crim. App. 2007); Reasor v. State, 12 S.W.3d 813, 817
(Tex. Crim. App. 2000).

            Ferguson
suggests that his consent was not voluntary because the illegal seizure of his
car “left him with no real option other than giving consent to a search of his
car.”[2] 
But he does not direct us to any evidence tending to show that the police
subjected him to coercion or threats.  See Reasor, 12 S.W.3d at 818.
After agreeing to speak with Officer Chappell, Ferguson admitted shooting Jack
and told Chappell exactly where in the vehicle Chappell would find the murder
weapon.  Ferguson then gave written consent to search his car, thus allowing
Chappell to lawfully search the vehicle.  See id. at 817; Gutierrez,
221 S.W.3d at 686.  When Ferguson gave his statement, he was about twenty-three
years old, he had an associate degree from a university, and he had worked as a
licensed security guard.  Chappell testified that Ferguson agreed to speak to
him after Chappell read him his rights and Ferguson indicated that he wished to
waive his rights.  Chappell denied that he coerced Ferguson or promised him
anything in exchange for his statement, and he testified that he did not display
his service weapon in the interview room.  Chappell also testified that it
appeared to him that Ferguson was giving his statement freely and voluntarily. 
Ferguson offered no conflicting evidence.  Therefore, viewing the totality of
the circumstances, the trial court could have reasonably concluded that
Ferguson’s consent to the search was voluntary.  See Gutierrez, 221
S.W.3d at 687–88; Reasor, 12 S.W.3d at 818–19.[3]

            Further,
the evidence does not support any contention that Chappell exploited the fact
that Ferguson’s car was already in police custody to obtain his confession or
consent to search.  See Powell, 306 S.W.3d at 770.  During the recorded statement,
no mention was made that Ferguson’s vehicle had been impounded, and the
record is at best unclear as to whether Ferguson even knew his car had been
impounded.  The written consent to search describes Ferguson’s vehicle as being
located at the police impound lot; however, there is no evidence Ferguson knew
the vehicle had been taken there until he reviewed and signed the written
consent form, which was after he had already agreed to give a statement to
Chappell and after he had already orally consented to the search of his vehicle. 
Thus, there is no causal connection between the allegedly unlawful seizure and
the otherwise lawful search of Ferguson’s car resulting in the policing
recovering the murder weapon.  See Hudson, 547 U.S. at 592–94; Powell,
306 S.W.3d at 770.  

            Based
on the record evidence, we conclude that the gun was obtained not from an
unlawful seizure of Ferguson’s car or police exploitation of the seizure, but
from a subsequent lawful search sufficiently distinguishable from the seizure
to attenuate any taint.  Therefore, the exclusionary rule does not apply and
the gun was admissible evidence even if the seizure of Ferguson’s car was
unlawful.

            Even
if Ferguson’s consent were not given voluntarily, we would still conclude that
he is not entitled to a reversal because any error in admitting the gun was
harmless.  In reviewing constitutional error that is subject to harmless-error
review, we must reverse a judgment of conviction or punishment unless we
determine beyond a reasonable doubt that the error did not contribute to the
conviction or punishment.  Tex. R. App. P. 44.2(a); see Hernandez v. State,
60 S.W.3d 106, 108 (Tex. Crim. App. 2001) (holding that harm analysis of Rule
44.2(a) was required to analyze the erroneous admission of evidence obtained in
violation of the Fourth Amendment).  In assessing the likelihood that the
jury’s decision was adversely affected by the error, we consider everything in
the record, including any testimony or physical evidence for the jury’s
consideration, the nature of the evidence supporting the verdict, the character
of the alleged error and its connection with other evidence, and whether the
State emphasized the error.  See Motilla v. State, 78 S.W.3d 352, 357–58
(Tex. Crim. App. 2002).

            Ferguson
argues that “the evidence discovered in the car constituted the only concrete
evidence of [his] involvement” in the murder.  But that is not correct.  The State
already had, and the jury heard, Ferguson’s recorded confession to shooting and
killing Jack, albeit in self-defense.  Ferguson does not contend on appeal that
the confession was illegally obtained or should not have been admitted.  Ferguson
also testified in his defense and admitted that he shot Jack.  Ferguson
testified that he did so in self-defense after Jack reached for a gun in his
waistband as they argued over Jack’s failure to repay a loan Ferguson had made
to him.  Ferguson also admitted that he shot Jack with a gun he had purchased from
“somebody on the street” a few weeks earlier.  Two witnesses provided additional
evidence connecting Ferguson to the murder.  Shamira Franklin testified that
Ferguson was at her apartment in the Arbor Square complex the night Jack was
killed.  She stated that Ferguson said Jack owed him some money “and if he kept
doing what he was doing, that he was going to end up dead or in jail.”  Shortly
after Ferguson left her apartment, she heard that Jack had been killed.  Ferguson
then returned later that night.  Ashley Robinson testified that she was living
in the Arbor Square apartments that night and saw Ferguson shortly after she
heard a single gunshot.  She testified that Ferguson smelled of gunpowder and
he “had a look . . . like a demon was on him.”  She realized what Ferguson had
done, and she became angry and “went off on him.”  She also testified that,
earlier that evening when she was at Franklin’s apartment, Ferguson became
angry about Jack selling fake crack cocaine.  He then left the apartment and
said he had to go “handle some business.”  Both Franklin and Robinson testified
that Ferguson regularly carried a gun.  In closing argument, the State focused
on convincing the jury that Ferguson’s claim of self-defense was neither
credible nor consistent with the evidence.  The murder weapon was mentioned
only briefly and then only in the context of addressing Ferguson’s
credibility.  

            Ferguson
does not claim the allegedly erroneously admitted evidence contributed in any
way to his conviction, nor does he otherwise explain how he was harmed by its
admission.  The State had sufficient evidence and could have proceeded to trial
without ever having introduced the murder weapon.  With Ferguson’s confession
and admission at trial that he shot Jack, the gun evidence contributed little
or nothing to the State’s case and did not in any way impair Ferguson’s
self-defense claim, as he admitted he shot Jack with his own gun.  See
Strong v. State, 138 S.W.3d 546, 555 (Tex. App.—Corpus Christi 2004, pet.
ref’d) (holding error in admitting evidence illegally seized from vehicle was
harmless when evidence was not especially probative, was not emphasized by
either party, and State relied on other evidence to meet its burden of proof).  Having
carefully evaluated the entire record, we conclude that on these facts any error
in admitting the gun evidence was harmless.

            We
overrule Ferguson’s issue and affirm the trial court’s judgment.

 








                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Brown,
Sullivan, and Christopher.

Do
Not Publish — Tex. R. App. P. 47.2(b).

 

 

 









[1]
In addition to the gun, the police recovered about one hundred rounds of
ammunition, miscellaneous papers, keys to Ferguson’s apartment, and a wallet
containing Ferguson’s identification card.  The gun, however, is the only item
Ferguson mentions in his brief.





[2]
The State contends Ferguson waived any complaint about the voluntariness of his
consent because he did not raise it at trial, and in fact when given an opportunity
to address the issue, he expressly declined.  Further, Ferguson’s only stated
objection to the admission of his confession was that he had “expressed the
desire” to have an attorney present, which the trial court overruled.  But
Ferguson’s written motion to suppress included an assertion that that he “was
not competent to understand his legal rights and could not have voluntarily
consented to any search or questioning.”  Therefore, we will address Ferguson’s
argument on appeal.





[3]
We note that during oral argument, Ferguson’s counsel conceded that his
statement was voluntary.